UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NANNETTE ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18 CV 1855 RWS |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Nannette Anderson brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of the Commissioner's decision denying her application for a period of disability, disability insurance benefits, and supplemental security income. Because the Commissioner's decision is supported by substantial evidence on the record as a whole, I will affirm the decision of the Commissioner.

### I.     Procedural History

Anderson alleges she became disabled as of August 12, 2015. Tr. at 63, 262, 274. On October 15, 2015, Anderson applied for a period of disability and

---

[1] On January 19, 2019, Andrew Saul became the Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), Saul is automatically substituted for former Acting Commissioner Nancy A. Berryhill as Defendant in this action.

disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and on November 23, 2015, she applied for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. The Social Security Administration denied Anderson's applications on March 3, 2016. Tr. at 157-163. Anderson requested a hearing before an Administrative Law Judge (ALJ), which took place on December 4, 2017. Tr. at 80-128, 1366-1422. On March 16, 2018, the ALJ issued a decision denying benefits. Tr. 58-79. On August 29, 2018, the Appeals Council denied Anderson's request for review. Tr. at 2-7. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, Anderson argues that the ALJ's determination of her residual functioning capacity (RFC) was not supported by substantial evidence, because the ALJ drew improper inferences from the medical evidence of record and improperly discredited Anderson's subjective complaints of pain. Anderson asks me to reverse the Commissioner's final decision and remand the matter for an award and calculation of benefits or further evaluation.

II.   **Medical Records and Other Evidence before the ALJ**

With respect to the medical records and other evidence of record, I adopt Anderson's recitation of facts set forth in her Statement of Material Facts (ECF Doc No. 20-1) insofar as they are admitted by the Commissioner (ECF Doc No.

25-1). I also adopt the additional facts set forth in the Commissioner's Statement of Additional Facts (ECF Doc No. 25-2), because Anderson does not refute them. Together, these statements provide a fair and accurate description of the relevant record before me. I will discuss additional facts as needed to address the parties' arguments.

## III.  Legal Standards

To be entitled to disability benefits, a claimant must prove that she is unable to perform any substantial gainful activity due to a medically-determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months.  42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A). To determine whether a claimant is disabled, the Commissioner evaluates her claims through five sequential steps.  20 C.F.R. § 404.1520(a)(4); Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009) (describing the five-step process).  Steps one through three require that the claimant prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment.  20 C.F.R. § 404.1520(a)(4)(i)-(iii).  If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to steps four and five.  Step four requires the Commissioner to consider whether the claimant retains the RFC to perform her past relevant work (PRW).  Id. at §

404.1520(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her PRW. Pate-Fires, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to her PRW, the burden shifts to the Commissioner at step five to show the claimant retains the RFC to perform other jobs that exist in significant numbers in the national economy. Id.; 20 C.F.R. § 404.1520(a)(4)(v).

I must affirm the ALJ's denial of Social Security benefits if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Pate-Fires, 564 F.3d at 942. The threshold for sufficiency of substantial evidence in this context "is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that detracts from the decision. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. Anderson v. Astrue, 696

4

F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. McNamara, 590 F.3d at 610.

**IV.    ALJ Decision**

The ALJ found that Anderson had not engaged in substantial gainful activity since August 12, 2015.  Tr. at 63.  She found that Anderson has suffered from the following severe impairments: status post multiple deep vein thrombosis ("DVT"), a history of carpal tunnel syndrome ("CTS"), status post release operations in January and March of 2017, osteoarthritis, obesity, degenerative disk disease, depression, and anxiety.  Tr. at 63; 20 C.F.R. §§ 404.1520(c), 416.920(c).  The ALJ found that this combination of severe impairments did not equate to one of the listings denominated in 20 C.F.R. Part 404, Subpart P, App'x 1.  Tr. at 64.

After evaluating Anderson's claims, the medical opinion evidence, the medical evidence of record, and testimony at the hearing, the ALJ determined that Anderson has the RFC

> to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), except lifting/carrying/pushing/pulling ten or more pounds occasionally and less than ten pounds frequently; sitting for six hours in an eight-hour workday; standing for two hours in a workday; walking for two hours in a workday; never climbing ramps, stairs, ladders, ropes and scaffolds; occasionally balancing, stooping, kneeling, crouching, and
>
> crawling; with no exposure to unprotected heights, moving mechanical parts and only occasional exposure to vibration.

5

Tr. at 65.

The ALJ also limited Anderson to "simple, routine tasks" and determined she is "capable of occasionally responding appropriately to the general public" and "tolerating few changes in a routine work setting." Id.  Based on her RFC, the ALJ determined that Anderson was unable to perform her PRW as defined in 20 C.F.R. §§ 404.1565, 416.965.  Tr. at 72.

The ALJ consulted a vocational expert (VE) to assess whether jobs within Anderson's RFC existed in significant numbers in the national economy.  Tr. at 73.  The VE identified the unskilled sedentary occupations of Weight Tester, Dowel Inspector, and Touch Up Screener. Id.  The VE found there were 25,000 weight tester jobs, 32,000 dowel inspector jobs and 98,000 touch up screener jobs available in the national economy.  Id.  Because Anderson had the RFC to perform work available within the national economy, the ALJ determined that Anderson was not disabled within the meaning of the Social Security Act.  Id.

**V.    Discussion**

    **a. Substantial Evidence Supports the ALJ's RFC Assessment**

Anderson argues that the ALJ did not sufficiently explain how the medical evidence in the record supports the RFC determination.  She contends that Social Security Ruling 96-8p requires even more than the ALJ's detailed, comprehensive review of the record and well-reasoned explanation supporting her RFC

6

determination.  Anderson misconstrues the requirements of SSR 96-8p and the applicable legal precedent.

Social Security Ruling 96-8p requires the ALJ to "include a narrative discussion describing how the evidence supports each conclusion."  SSR 96-8p.  However, the ALJ is "is not required to discuss every piece of evidence submitted."  Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998)).  When reviewing the ALJ's decision, my job is to "review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations."  Nash v. Comm'r, Soc. Sec. Admin., 907 F.3d 1086, 1090–91 (8th Cir. 2018).  "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."  Wildman, 596 F.3d at 966 (citing Black at 386).

The ALJ considered Anderson's subjective complaints, objective medical evidence, and medical opinion evidence.  Tr. at 66-71.[2]  The ALJ reviewed medical opinion evidence from Alan Aram, Psy.D (the State agency psychological consultant) and Kathleen O'Rourke, NP.  Tr. at 71-72.  Dr. Aram opined that Anderson's mental impairments were not severe, with mild limitations in activities of daily living, social functioning and concentration, persistence or pace, and no

---

[2] I discuss the ALJ's evaluation of Anderson's subjective complaints, along with the objective medical evidence, below in Part V(b).

7

episodes of decompensation. Tr. at 71. The ALJ ultimately relied on "better evidence at the hearing level" and concluded Anderson's restrictions were more severe than Dr. Aram originally opined. Tr. at 71 (referring to evidence discussed at page 64 of the transcript).

O'Rourke also partially completed a physical RFC questionnaire. Tr. at 72, 875-79. While she noted pain and subjective complaints that were severe enough to interfere with Anderson's attention and concentration, she did not opine that Anderson was functionally limited. Tr. at 72, 875-79. Although O'Rourke is not an acceptable medical source, the ALJ gave substantial weight to her opinion because it was consistent with the medical record as a whole. Tr. at 72; 20 C.F.R. § 404.1527(f)(1) ("It may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if . . . the opinion is more consistent with the evidence as a whole").

After extensively reviewing the objective medical evidence, medical opinion evidence, and Anderson's testimony, the ALJ's decision summarizes that the RFC assessment is "supported by the absence of care expected for a totally disabled individual; the overwhelmingly normal objective findings cited by multiple providers; the successful use of various forms of treatment to manage her symptoms; and the absence of any restrictions from her treating nurse practitioner." Tr. at. 71. The ALJ sufficiently articulated her reasons for her RFC

8

determination, and the RFC is supported by substantial evidence from the record, including medical evidence.

### b. Anderson's Subjective Complaints

The ALJ found that Anderson's underlying medically determinable physical and mental impairments could be reasonably expected to produce her symptoms but that Anderson's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record. Tr. at 66. In explaining her conclusion, the ALJ noted a number of inconsistencies between Anderson's statements and the medical evidence in the record.

As a general matter, decisions regarding the weight to assign to a claimant's testimony "are the province of the ALJ." Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016). When evaluating evidence of pain or other symptoms, an ALJ must consider the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). An ALJ may disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See, e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering subjective complaints, an ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), but the decision does not need to include discussion of how each Polaski factor

9

supports the ALJ's determination.[3] Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007) (citing Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004)).  A claimant's statements about the intensity and persistence of pain or its effect on the claimant's ability to work may not be rejected solely because the available objective medical evidence does not substantiate those statements.  20 C.F.R. §§ 404.1529(c), 416.929(c).

Anderson contends that the ALJ did not consider any of the Polaski factors. The ALJ's written opinion refutes this argument.  The ALJ considered Plaintiff's work history (e.g., Tr. at 66 ("claimant testified that she last worked as a certified medication technician but was terminated for missing too much work")); daily activities (Id. ("claimant admitted she was capable of preparing meals, cleaning, doing laundry, washing dishes, driving, going out alone, shopping in store for food for an hour . . . spending time with family and friends in person . . .")); duration, frequency, and intensity of pain (e.g., Tr. at 67 ("leg pain . . . low back pain . . . 'extreme pain' in her right leg up to and including her low back and hip")); effectiveness of medications (e.g., id. ("claimant admitted that the medications she

---

[3] The Eighth Circuit has recognized that "Social Security Ruling 16-3p eliminates use of the term 'credibility' and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between subjective assertions and the balance of the record as a whole." Noerper v. Saul, 964 F.3d 738, 745 (8th Cir. 2020).  SSR 16-3p applies to Anderson's case, "but it largely changes terminology rather than the substantive analysis to be applied."  Id.

10

was prescribed were very helpful, particularly the Norco and Baclofen")).  The ALJ provided narrative discussion of evidence considered for each <u>Polaski</u> factor.

The ALJ also extensively discussed the ways in which Anderson's testimony was inconsistent with the medical and nonmedical sources and laboratory findings from the record. For instance, Anderson testified to having cysts on her brain, but she last underwent treatment for them seven years prior and no medical documentation of brain cysts exits in the record.  Tr. at 1383-34.  Although Anderson argues the ALJ ignored her carpal tunnel syndrome, medical records show that her condition improved after surgery.  Tr. at 555-556, 1392.  Anderson also testified that her steroid injections worked very little, but on July 14, 2017, she reported that the injections relieved her pain and her doctor observed that she was "moving fairly well."  Tr. at 70, 118, 564.  She further testified that she had to use a cane and hold on to hand rails to walk, but medical reports indicated that Anderson could walk unassisted, with a normal gait.  Tr. at 107, 558, 562.  Anderson testified that she spent ninety-five percent of the day reclining on the couch, that she had to elevate her legs ninety-eight percent of the time, and that she could walk only ten feet without having to take a break.  Tr. at 66, 97, 101, 108.  However, Anderson also reported that she was able to prepare meals, clean, do laundry, wash dishes, drive, go out alone, shop in a store, spend time with her family and friends, and attend church weekly.  Tr. at 66, 334-44; <u>see</u> <u>Ponder v.</u>

11

Colvin, 770 F.3d 1190, 1195-96 (8th Cir. 2014) (finding that claimant's ability to perform light housework, wash dishes, cook, do laundry, handle money, go out alone, visit her family, and go to church undermined her assertion of total disability).

Moreover, the ALJ noted that treatment had generally been successful in controlling Anderson's symptoms. Tr. at 71.  An ALJ's decision to discount allegations of symptoms may be supported by evidence of successful treatment providing relief.  See Rose v. Apfel, 181 F.3d 943, 944 (8th Cir. 1999); Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997) ("Impairments that are controllable or amenable to treatment do not support a finding of disability.").  For instance, after receiving bilateral carpal tunnel release surgery, Anderson reported to her orthopedist that the symptoms had resolved.  Id.  Anderson also told her orthopedist that the steroid injections to her knees had provided good relief, and the Mobic she had been prescribed was helpful.  Tr. at 69, 71.

Additionally, the ALJ found that Anderson's prior subjective complaints to her physicians were unsupported by the objective medical evidence. When Anderson visited the emergency room on February 15, 2015, complaining of right calf pain and swelling, the doctor ordered an ultrasound that produced no evidence of DVT and discharged her.  Tr. at 67, 403-04.  With continued complaints of leg pain, in July 2015, Anderson saw a vascular surgeon who noted that he suspected

her symptoms were due to previous venous thrombosis in her leg. Tr. at 67, 384-85. However, an ultrasound on July 16, 2018 showed no evidence of deep vein thrombosis. Tr. at 67, 454. After Anderson complained of back pain, her nurse practitioner ordered an MRI that showed minimal to mild degenerative changes in her lumbar spine and no significant disc bulge or spinal canal stenosis. Tr. at 67, 405-06, 430-31, 456. At a follow up appointment on August 7, 2015, Anderson's examining nurse practitioner made no objective findings relating to back pain. Tr. at 67, 429. Anderson also complained of leg and back pain at appointments on October 9, 2015, January 18, 2016, and July 5, 2016, but the records from those dates also note no objective findings. Anderson's only treatment plan following those visits was to refill her medication. Tr. at 67-68, 427, 428, 865.

At March 21, 2017 and July 14, 2017 visits to the orthopedist, Anderson complained of knee pain and joint tenderness. Tr. at 68, 555-56, 564-65. The doctor noted that x-rays came back with mild to moderate results and instructed Anderson to do knee exercises, lose weight, and wean off Oxycodone. Tr. at 68, 555-56, 564-65. Anderson also visited a rheumatologist on April 3, 2017 with complaints of joint pain. After receiving the results from her lab tests, the rheumatologist found that she did not have any rheumatological issues. Tr. at 69, 657, 796-99. On July 7, 2017, an imaging doctor assessing Anderson's complaints of pain noted that her MRI showed "nothing to indicate why [Anderson] is having

13

pain." Tr. at 70, 650. Anderson followed up with her rheumatologist on October 17, 2017, reporting pain in her knees and back. Tr. at 70, 623-41. Physical examinations revealed normal to mild results, and laboratory results came back relatively normal. Tr. at 70, 623-41, 920-42. At an October 30, 2017 appointment with her nurse practitioner, all objective findings were normal. Tr. at 70, 642.

Substantial evidence on the record as whole supports the ALJ's decision to discount Anderson's subjective statements about the frequency, duration and limiting effects of her pain as inconsistent with the medical evidence and other evidence in the record. The ALJ extensively detailed these inconsistencies and appropriately considered Anderson's testimony when fashioning the RFC.

## VI. Conclusion

When reviewing an adverse decision by the Commissioner, my task is to determine whether the decision is supported by substantial evidence on the record as a whole. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001). For the reasons set out above, substantial evidence supports the ALJ's RFC determination as well as the weight she accorded to Anderson's subjective complaints. I will therefore affirm the decision of the Commissioner.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed, and Plaintiff's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

                                                     _/s/ Rodney W. Sippel_
                                                     RODNEY W. SIPPEL
                                                     UNITED STATES DISTRICT JUDGE

Dated this 14th day of August, 2020.